**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE ASBESTOS LITIGATION:<br><br>EDNA S. ESSER a/k/a Edna Tallman, Individually and as Executrix of the Estate of CHARLES TALLMAN, Deceased, and on behalf of all Wrongful Death beneficiaries,<br><br>Plaintiffs,<br><br>v.<br><br>CBS CORPORATION, et al.,<br><br>Defendants. | ) | Civ. No. 15-395-SLR-SRF |

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

Presently before the court in this diversity action is Plaintiff's Motion to Remand to State Court ("Motion to Remand") on the grounds that the Notice of Removal filed by Foster Wheeler Energy Corp. ("Foster Wheeler") does not meet the requirements of the federal officer removal statute. (D.I. 23) For the reasons that follow, I recommend that the court **DENY** Plaintiff's Motion to Remand.

## II. BACKGROUND

Charles Tallman ("Mr. Tallman") and Edna Tallman ("Plaintiff") filed this asbestos related personal injury action in the Superior Court of the State of Delaware on April 1, 2015.[1] (D.I. 1, Ex. A) The Complaint alleges that Mr. Tallman was exposed to asbestos through

---

[1] Charles Tallman passed away following the initiation of this suit. The Complaint has since been amended to substitute a personal representative of the decedent's estate and to assert wrongful death and survival claims. (D.I. 46)

personal automotive work from the 1940's to 2000, while serving as a Boiler Tender in the U.S. Navy from 1947 to 1967 aboard ships including the USS Caloosahatchee, USS Gyatt, and USS Independence, and while working at the Metro Machine Shipyard in Norfolk, Virginia from 1967 to 1972. (*Id.* at ¶ 11(b)-(c)) As a result of that alleged exposure, Mr. Tallman developed malignant pleural mesothelioma. (*Id.* at ¶ 11) The Complaint alleges design defect, failure to warn, negligence, and strict liability claims against Foster Wheeler and other defendants, including CBS Corporation, f/k/a/ Westinghouse Electric Corporation ("Westinghouse").[2] (*Id.* at 7–16)

On May 18, 2015, Foster Wheeler removed the action to this court pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute. (D.I. 1) Westinghouse joined in the Notice of Removal. (D.I. 7) On June 17, 2015, Plaintiff filed the pending Motion to Remand pursuant to § 1447(c). (D.I. 23) Foster Wheeler and Westinghouse oppose the Motion to Remand on independent grounds. (D.I. 28; D.I. 29) The court held oral argument on October 20, 2015. (10/20/15 Tr.)

## III. LEGAL STANDARD

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), provides that a civil action may be removed to the district court when the United States, an agency thereof, or any officer or person acting under that officer is sued for any act under the color of such office. The party removing an action to federal court bears the burden of proving that removal is appropriate. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). In the Third Circuit, the

---

[2] CBS Corporation is a Delaware corporation formerly known as Viacom Inc. It is a successor by merger to CBS Corporation, a Pennsylvania corporation formerly known as Westinghouse Electric Corporation.

provisions of the federal officer removal statute are to be "broadly construed."[3] *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994) (distinguishing the general removal standard from the standard applicable in cases removed pursuant to Section 1442(a)).[4] The Supreme Court has explained that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (citation omitted).

To establish federal officer removal jurisdiction under Section 1442(a)(1), a defendant must show the following:

> (1) it is a "person" within the meaning of the statute;
> (2) the plaintiffs' claims are based upon the defendant's conduct "acting under" a federal office;
> (3) it raises a colorable federal defense; and
> (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)).

With respect to the first element of the statute, this court has held that "defendants, as corporations, are 'persons' within the meaning of [Section 1442(a)(1)]." *In re Asbestos Litig.*

---

[3] The Third Circuit draws a distinction between the removal provisions of § 1441, which "are to be strictly construed against removal," *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987), and the provisions of the federal officer removal statute, which are to be "broadly construed." *Sun Buick*, 26 F.3d at 1262. *See also Deuley v. Dyncorp Int'l, Inc.*, 588 F. Supp. 2d 539, 542 (D. Del. 2008) ("It is recognized that this provision [§ 1442(a)(1)] is not to be construed narrowly."); *Parlin v. Dyncorp Int'l, Inc.*, 579 F. Supp. 2d 629, 634 (D. Del. 2008) (explaining that Section 1442(a) is "liberally construed").

[4] *See also Megill v. Worthington Pump, Inc.*, No. CIV. A. 98-76-SLR, 1999 WL 191565, at *2 (D. Del. Mar. 26, 1999); *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *1–2 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013).

(*Seitz*), 661 F. Supp. 2d 451, 454 (D. Del. 2009) (citing *Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)); *see also Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220, 223 (D. Del. 2009).

To satisfy the second element, the defendant "must demonstrate that a 'federal office' was the source of the specific act for which the contractor now faces suit." *In re Asbestos Litig.* (*Seitz*), 661 F. Supp. 2d at 454 (citing *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 138 (D. Mass. 2009)). This factor has been described as "requiring 'a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations.'" *Id.* (quoting *Good*, 914 F. Supp. at 1128).

The third element requires the defendant to demonstrate a colorable defense to a plaintiff's claims. *Megill v. Worthington Pump, Inc.*, No. CIV. A. 98-76-SLR, 1999 WL 191565, at *3 (D. Del. March 26, 1999). Here, Foster Wheeler and Westinghouse rely on the federal government contractor defense. (D.I. 1; D.I. 7) According to the Supreme Court, a federal contractor is not liable for design defects in military equipment[5] under state tort laws when:

> (1) the United States approved reasonably precise specifications;
> (2) the equipment conformed to those specifications; and
> (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.[6]

---

[5] In the Third Circuit, the government contractor defense is "available to all contractors who are 'compelled by a contract to perform an obligation for the United States,' even where a nonmilitary product is at issue." *Megill*, 1999 WL 191565, at *3 n. 1 (quoting *Carley v. Wheeled Coach*, 991 F.2d 1117, 1120 (3d Cir. 1993)).

[6] According to the *Boyle* court:

> The first two of these conditions assure that . . . the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability.

*Boyle v. United Techs Corp.*, 487 U.S. 500, 512–13 (1988).

*Boyle*, 487 U.S. at 512–13.

Although the *Boyle* decision applied the government contractor defense to a design defect products liability claim, federal courts have recognized the defense's applicability to state law failure to warn clams, as well. *See, e.g., In re Asbestos Litig.* (*Seitz*), 661 F. Supp. 2d at 454; *Kirks*, 654 F. Supp. 2d at 224–25; *Megill*, 1999 WL 191565, at *4.[7] "'[T]he determination of whether defendant has demonstrated a colorable defense under *Boyle* collapses into the analysis required for determining whether defendant has shown a causal connection between plaintiff's claims and the conduct performed under color of federal office.'" *In re Asbestos Litig.* (*Seitz*), 661 F. Supp. 2d at 454–55 (quoting *Megill*, 1999 WL 191565, at *4).

The Supreme Court in *Boyle* held that the government contractor defense pre-empts state tort law when "the state-imposed duty of care that is the asserted basis of the contractor's liability...is precisely contrary to the duty imposed by the government contract." *Boyle*, 487 U.S. at 509. Thus, in actions such as the present case, involving allegations of failure to warn of the dangers of asbestos, the removing defendant

> must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. Moreover, it seems clear to us [] that *Boyle's* requirement of government approval of "reasonably precise specifications" mandates that the federal duties be imposed upon the contractor. The contractor must show that whatever warning accompanied a product resulted from a determination of a government official,...and thus that the government itself "dictated" the content of the warnings meant to accompany the product.

---

[7] *See also Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996) ("It is well established that the government contractor defense . . . may operate to defeat a state failure-to-warn claim.") (citing *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996)); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995); *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 629 (2d Cir. 1990); *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *6–8 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013).

*In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d at 455 (quoting *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990)). "'A crucial element of both the *Boyle* decision and the removal requirements is missing if the contractor fails to establish a causal connection between the conduct being supervised by the [federal office] and the conduct deemed offensive in the plaintiff's complaint.'" *Id.* (alteration in original) (quoting *Megill*, 1999 WL 191565, at *4).

Plaintiff brings both design defect and failure to warn claims against multiple defendants. The entire action is removable if one defendant shows that it is entitled to removal as to a single claim.[8] However, although the court need not analyze each of Plaintiff's claims against both Foster Wheeler and Westinghouse if removal is proper with respect to one claim, the court will address both defendants' arguments, as both defendants submit particularly persuasive evidence.

## IV. DISCUSSION

The court must determine whether Foster Wheeler or Westinghouse acted under the direction of federal officers, are entitled to the government contractor defense, and can demonstrate the causal connection between their acts and Mr. Tallman's injuries. Foster Wheeler and Westinghouse contend that the evidence demonstrates that the Navy exercised control and supervision over the design and manufacture of their products such that the

---

[8] *See Nadler v. Mann*, 951 F.2d 301, 306 n. 9 (11th Cir. 1992) ("It is well settled that if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims.") (citing *Nat'l Audubon Soc. v. Dep't of Water & Power*, 496 F. Supp. 499, 509 (E.D. Cal. 1980)); *see also Kirks*, 654 F. Supp. 2d at 223 (for the sake of simplicity, the court only addressed the failure to warn claim, even though plaintiffs asserted additional claims); *MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2013 WL 6571808, at *3 n. 5 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2014 WL 108535 (D. Del. Jan. 9, 2014) (the court did not address the design defect claim because "the Court conclude[d] that Section 1442 removal is proper based on the failure to warn claims, and that is all that is necessary for removal.").

government contractor defense precludes state tort law liability in this action. (D.I. 28; D.I. 29)

On the other hand, Plaintiff argues that the government specifications indicate the use of asbestos was an option, thus, there is no evidence that the Navy specifically required or directed that asbestos be used with the defendants' products. Therefore, Plaintiff asserts that neither Foster Wheeler nor Westinghouse can prove by a preponderance of the evidence that either is entitled to removal under 28 U.S.C. § 1442(a). (D.I. 24 at 3–18; D.I. 40)

However, as outlined by this court in *Kirks v. GE*, and reaffirmed in *Walkup v. Air & Liquid Sys. Corp.*, the preponderance standard does not apply. This court has stated:

> there are decisions rejecting evidence such as that proffered by [the defendants], instead requiring a higher threshold of evidence to establish federal officer removal jurisdiction. For instance, in *Holdren v. Buffalo Pumps, Inc.*, the district court not only required the contractor to demonstrate that "the decision to warn must be the government's, not the contractor's," but that the decision also "reflect a federal interest incompatible with the important health and safety requirements of state law." While these considered opinions have merit, given that the provisions of the federal officer removal statute are to be construed broadly, and given that [defendants] ha[ve] produced evidence demonstrating a significant degree of control by a federal office over the warnings related to the dangers of asbestos, I respectfully reach a contrary conclusion.

*Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *3 (D. Del. Sept 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013) (quoting *Kirks*, 654 F. Supp. 2d at 225–26 (citations omitted)).

**A. Analysis of Colorable Federal Defense Standard**

This court's prior rulings in *Kirks* and *Walkup* are consistent in broadly construing the federal officer removal statute. Additionally, in *Hagen v. Benjamin Foster Co.*, Judge Edward C. Robreno (assigned to all asbestos-related personal injury actions under MDL No. 875) outlined the divergent views about what evidence a defendant must proffer to defeat a motion to remand. 739 F. Supp. 2d 770, 777 (E.D. Pa 2010). After an extensive review of the case law, Judge

Robreno adopted the approach that a defendant must only put forth a plausible colorable defense to meet the requirements for removal under Section 1442(a)(1). *Id.* at 780. Judge Robreno cited the Supreme Court's mandate to broadly construe the federal officer's rights of removal, holding that "a defendant is entitled to removal under Section 1442(a)(1) where the defendant identifies facts which, viewed in the light most favorable to defendant, entitle him or her to a complete defense." *Id.* at 781, 778.

The standard in *Hagen* has been adopted by federal district courts in a number of jurisdictions, as well as in this court.[9] This court further reiterated in *Walkup*:

> Although the evidence provided by [the defendant] may ultimately prove insufficient to support its defense on the merits, the Court finds that Plaintiffs overestimate the demands of § 1442 at this stage of the proceedings. To establish jurisdiction under § 1442, [the defendant] need not prove its defense but need only show that it has the underpinnings of a valid federal defense.

*Walkup*, 2013 WL 5448623, at *8 n. 14. Therefore, pursuant to *Hagen* and this court's prior precedent, Plaintiff's Motion to Remand should be denied if Foster Wheeler or Westinghouse can "identif[y] facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial." *Hagen*, 739 F. Supp. 2d at 783. Plaintiff fails to convince the court that this standard should not apply. As discussed below, Foster Wheeler and Westinghouse have each satisfied this standard and each element of federal officer removal jurisdiction.

---

[9] *See, e.g.*, *Walkup*, 2013 WL 5448623, at *3; *Joyner v. A.C. & R. Insulation Co.*, Civil No. CCB-12-2294, 2013 WL 877125, at *5 (D. Md. Mar. 7, 2013), *reconsideration denied*, 2013 WL 2460537 (4th Cir. June 6, 2013) ("After reviewing the conflicting cases, this court finds the analysis in *Hagen* cogent and consistent with the general removal standard."); *Williams v. Aetna Life Ins. Co.*, Civil Action No. 2:12-0358-KD-B, 2013 WL 593505, at *5 (S.D. Ala. Jan. 30, 2013), *report and recommendation adopted*, 2013 WL 593501 (S.D. Ala. Feb. 15, 2013); *Shepherd v. Air & Liquid Sys. Corp.*, C.A. No. 12-143-L, 2012 WL 5874781, at *3 (D.R.I. Nov. 20, 2012).

**B. Analysis of Federal Officer Removal Jurisdiction**

To establish removal jurisdiction under Section 1442(a)(1), Foster Wheeler or Westinghouse must show the following:

(1) it is a "person" within the meaning of the statute;
(2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office;
(3) it raises a colorable federal defense; and
(4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)).

There is no dispute that Foster Wheeler and Westinghouse, as corporations, are each a "person" within the meaning of the statute. *See Hicks v. Boeing Co.*, Civil Action No. 13-393-SLR-SRF, 2014 WL 1051748, at *4, (D. Del. Mar. 17, 2014), *report and recommendation adopted*, 2014 WL 1391104 (D. Del. Apr. 8, 2014). Therefore, the first element of the federal officer removal statute has been met.

**a. Defendants' Conduct "Acting Under" a Federal Office**

The defendants have shown that Plaintiff's design defect and failure to warn claims are based upon their respective conduct "acting under" a federal office. Foster Wheeler submitted three affidavits demonstrating "that the acts forming the basis of [Plaintiff's claims] were performed pursuant to...direct orders or comprehensive and detailed regulations of the Navy and its officers." *In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d 451, 454 (D. Del. 2009). In *Walkup*, this court found that Foster Wheeler demonstrated through identical affidavits that it was acting under the direction of federal officers of the Navy. *See* 2013 WL 5448623, at *5–7; *see also Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220, 223–34 (D. Del. 2009) (finding that the same affidavits satisfy the second element of the federal officer removal statute).

Plaintiff has not presented any reasons why the court should depart from *Walkup* in its analysis of the same affidavits supporting removal. In the instant case, Foster Wheeler submitted an affidavit from J. Thomas Schroppe ("Mr. Schroppe"), the former president of Foster Wheeler. (D.I. 29, Ex. 8) Mr. Schroppe asserts that Foster Wheeler was required to strictly comply with military specifications as to the components of Foster Wheeler's boilers. (D.I. 29, Ex. 8 at ¶ 6) He also states that the Navy exercised "intense direction and control" over Foster Wheeler's technical manuals. (*Id.* at ¶ 21). Moreover, the Navy provided Foster Wheeler with precise specifications for the design of any component to be installed on a Navy vessel, as well as for any technical manuals or writings related to such components. (*Id.* at ¶¶ 5, 21–22) "Foster Wheeler would not be permitted…to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy." (*Id.* at ¶ 22)

Foster Wheeler also submitted an affidavit from Admiral Ben J. Lehman ("Admiral Lehman"), a retired Rear Admiral of the U.S. Navy, identical to that which was submitted in *Walkup*. 2013 WL 5448623, at *6; (D.I. 29, Ex. 10) Admiral Lehman stated that the Navy "drafted, approved, and maintained" specifications for boilers, and the Navy maintained "complete control over every aspect of the equipment," including the material requirements and warning labels. (D.I. 29, Ex. 10 at ¶¶ 6–11) Foster Wheeler was required to comply with "every detail" of these specifications. (*Id.* at ¶ 5) Further, the Navy "would not have allowed…Foster Wheeler[] to affix any warning related to any asbestos hazards on [its] equipment," or to "place any warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy or to a U.S. Navy contractor." (*Id.* at ¶ 10)

Finally, Foster Wheeler submitted an affidavit from Lawrence Stilwell Betts, MD, PhD,

CIH, FACOEM ("Dr. Betts"), a physician and retired Navy officer. (*Id.*, Ex. 9) Dr. Betts asserts that there was nothing about the hazards of asbestos that Foster Wheeler knew that the United States Navy did not know. (*Id.* at ¶ 31) Moreover, he avers that "[t]he Navy's use of asbestos aboard ships and on boilers, if any, was not by chance or based on any requirements of Foster Wheeler. The use of asbestos was based upon military necessity." (*Id.* at ¶ 5)

Based on the above affidavits, the court is satisfied that Foster Wheeler has put forth facts to show that Plaintiff's design defect and failure to warn claims are based upon Foster Wheeler's conduct "acting under" the office of the Navy and its officers. *See Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *7 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013); *Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220, 224 (D. Del. 2009) (analyzing identical affidavits).

Similarly, Westinghouse has shown that Plaintiff's claims are based upon Westinghouse's conduct "acting under" a federal office. Westinghouse submitted an affidavit from retired Rear Admiral Roger B. Horne, Jr. RADM USN ("Admiral Horne"). (D.I. 28, Ex. A) Admiral Horne was the Chief Engineer and Deputy Commander of Naval Sea Systems Command for Ship Design and Ship Systems Engineering. (*Id.* at ¶ 1) Admiral Horne described the chain of command for ship design in the Navy leading up to the Secretary of the Navy, who "has ultimate authority over the Navy and Navy shipbuilding." (*Id.* at ¶ 9) He stated that "[i]t was the Navy, not contract manufacturers, that required the use of asbestos thermal insulation with turbines intended for installation on Navy ships." (*Id.* at ¶ 25) Additionally, he explained that Naval Machinery Inspectors were responsible "for assuring that contractors follow the required military specifications as they related to naval machinery," and the Inspectors were required to report any "failures to comply with specifications" to superiors. (*Id.* at ¶ 12)

Moreover, Admiral Horne stated that "the Navy controlled all labeling that went on all equipment and materials." (*Id.* at ¶ 31)

Westinghouse also submitted copies of Navy shipbuilding specifications from the Bureau of Engineering ("MilSpecs"). (D.I. 41) The MilSpecs require that asbestos be used as insulation on turbines and boilers in certain situations, for example, when the turbine surface is heated to over 100 degrees, or as a covering agent to insulating cement. (*Id.* at 13) Westinghouse need not prove that the Navy actually required the use of asbestos; but rather, it must articulate facts showing that "the acts forming the basis of [Plaintiff's claims] were performed pursuant to...direct orders or comprehensive and detailed regulations of the office of the Navy and its officers." *In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d 451, 454 (D. Del. 2009). Westinghouse has submitted evidence in the form of affidavits and technical manuals indicating that ship design and labeling requirements were regulated by the Navy. Therefore, Westinghouse has put forth facts to show that Plaintiff's design defect and failure to warn claims are based on conduct "acting under" the office of the Navy and its officers.

**b. Defendants' Colorable Federal Defense**

With respect to the third element of the federal officer removal statute, Foster Wheeler and Westinghouse have each raised a colorable federal defense to Plaintiff's claims: the government contractor defense. The government contractor defense displaces state tort law where:

(1) the United States approved reasonably precise specifications;
(2) the equipment conformed to those specifications; and
(3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States.

*Boyle v. United Techs Corp.*, 487 U.S. 500, 512 (1988). In failure to warn claims, federal courts have tailored the *Boyle* elements as follows:

(1) the United States exercised its discretion and approved the warnings, if any;
(2) the contractor provided warnings that conformed to the approved warnings; and
(3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

*Hicks v. Boeing Co.*, Civil Action No. 13-393-SLR-SRF, 2014 WL 1051748, at *5 (D. Del. Mar. 17, 2014), *report and recommendation adopted*, (D. Del. Apr. 8, 2014) (quoting *MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2013 WL 6571808, at *4 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2014 WL 108535 (D. Del. Jan. 9, 2014)).

In analyzing the government contractor defense, the court views the facts in the light most favorable to the defendant, and it does not address the merits of the defense. *See id.* (citing *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *7 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013)). As discussed *supra*, the defendants need only identify facts, which if viewed in their favor, would entitle them to the government contractor defense. *Walkup*, 2013 WL 5448623, at *4–5 (quoting *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010)).

Foster Wheeler's evidence adequately shows that the Navy "approved reasonably precise specifications" in respect to the design and manufacture of Foster Wheeler's products, and the Navy "exercised its discretion and approved the warnings, if any" in safety manuals and labels. *Walkup*, 2013 WL 5448623, at *7. As to the design defect claim, Admiral Lehman's affidavit indicates that Foster Wheeler designed and manufactured its boilers "in accordance with detailed specifications written, approved, and issued by the Navy." (D.I. 29, Ex. 10 at ¶ 3) As to the failure to warn claim, Foster Wheeler would not be permitted to include "any type of warning or caution statement" with its products because Navy specifications "governed every significant characteristic of the equipment used on U.S. Navy ships, including the instructions and

warnings." (*Id.*, Ex 8 at ¶ 22; Ex. 10 at ¶ 10) Thus, the Navy controlled "which warnings should or should not be included." (*Id.*, Ex. 10 at ¶ 10) As such, the evidence is sufficient to show that the Navy had control over product design and lack of warnings. *See Walkup*, 2013 WL 5448623, at *7.

Further, the evidence suggests that Foster Wheeler's products conformed to Navy specifications because the products would not be accepted unless the equipment complied with Navy design specifications "in every detail." *Id.* (D.I. 29, Ex. 10 at ¶ 5) Similarly, Foster Wheeler conformed to the Navy's warning and labelling requirements by excluding warnings that "would not be permitted []under the specifications…." (D.I. 29, Ex. 8 at ¶ 22)

Foster Wheeler also satisfies the third element of the government contractor defense, which requires it to have warned about dangers associated with use of its equipment that were known to it but not to the Navy. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). Foster Wheeler was not required to warn about hazards of which the Navy was already aware. *See Walkup*, 2013 WL 5448623, at *7. In *Walkup*, this court found that Dr. Betts' identical affidavit indicated that Foster Wheeler had no knowledge regarding the hazards of asbestos that the Navy did not know about. *Id.* Dr. Betts stated, "[t]here was no information concerning any asbestos-containing hazard or danger posed by any asbestos-containing product applied to any marine boiler on a United States Navy ship known to a boiler manufacturer, like Foster Wheeler, that was not known to the United States and the United States Navy." (D.I. 29, Ex. 9 at ¶ 32) Dr. Betts cites multiple sources indicating that the Navy was aware of the hazards of asbestos since at least the early 1920's. (*Id.* at ¶¶ 7–31) Therefore, Foster Wheeler has satisfied the third element of the government contractor defense and has established a colorable federal defense under the federal officer removal statute.

Westinghouse has also satisfied the elements of the federal government contractor defense. The evidence suggests that the Navy "approved reasonably precise specifications" or exercised direction and control over the design, manufacture, any accompanying safety manuals and labeling requirements, *see Walkup*, 2013 WL 5448623, at *7, because "turbines built for Navy vessels, including Westinghouse [] turbines, were manufactured according to plans and specifications prepared, written, and issued exclusively by the Navy." (D.I. 28, Ex. A at ¶ 16) Moreover, "the Navy controlled labeling that went on all equipment and materials." (*Id.* at ¶ 31) Also, in an affidavit submitted by Westinghouse from Samuel A. Foreman, M.D. ("Dr. Foreman"), Dr. Foreman described that the Navy established a Uniform Labeling Program with instructions that applied "to the labeling of all hazardous material throughout the Naval Establishment wherever distribution of hazardous chemical and materials is made to the actual consumer. . . ." (*Id.*, Ex. D at ¶¶ 70–71) He explained:

> The fact that the Navy determined that no hazard label was appropriate for an asbestos-containing insulation material of the type whose hazards it have been aware of and discussing since the 1920s is inconsistent with the notion that the Navy sought, or would have accepted, asbestos-related warnings affixed to equipment or machinery or in technical documentation relating to such items.

(*Id.* at ¶ 77) With this evidence, along with citation to the MilSpecs, Westinghouse is able to articulate facts sufficient to show that the Navy approved reasonably precise specifications and exercised control over the design and manufacture of its products. Westinghouse need not show that the Navy specifically dictated the use of asbestos in its designs; however, Westinghouse's evidence also supports the stricter standard.

The evidence is likewise adequate to show that Westinghouse's products conformed to the Navy's specifications, *see Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988), as Admiral Horne asserted that "all Navy vessel equipment, including Westinghouse [] turbines,

was built according to Navy specifications and approved for installation...exclusively by the Navy and its designated officers." (D.I. 28 at ¶ 20) The Navy had the "final say" over all design attributes of equipment aboard the ships, and manufacturers were required to conform to such standards for safety purposes. (*Id.* at ¶¶ 21–22) Admiral Horne attested to the fact that the turbines performed to the requirements specified by the Navy, as all work was reviewed and inspected by Navy personnel to assure its needs were met. (*Id.* at ¶ 34)

Finally, Westinghouse satisfies the third element of the government contractor defense, which requires it to have warned about dangers associated with use of its equipment that were known to it but not to the Navy. *See Boyle*, 487 U.S. at 512. Dr. Foreman makes clear that the Navy knew about the hazards of asbestos as early as 1922, as exemplified by multiple Navy publications concerning the topic. (D.I. 28, Ex. D at ¶¶ 27, 30, 31, 36–37, 42, 44, 45, 49, 52, 56) This evidence constitutes a plausible showing that the Navy was already familiar with the dangers of asbestos, such that Westinghouse was not obligated to apprise the Navy of the risks. Accordingly, Westinghouse has set forth evidence that satisfies each element of the federal contractor defense, and therefore, it too has established a colorable federal defense under Section 1442(a)(1).

**c. Causal Nexus Between Plaintiff's Claims and Defendants' Conduct**

The defendants have satisfied the last element of the federal officer removal statute by showing a causal nexus between Plaintiff's claims and their respective conduct performed under color of a federal office. While examining the same affidavits submitted by Foster Wheeler, this court has explained:

> [Foster Wheeler's] design defect claim arises directly out of the Navy's specifications, which allegedly required Foster Wheeler to use asbestos in the products it manufactured and designed. The failure-to-warn claim arises directly out of the Navy's alleged involvement in the process of determining what warnings

> could be included with, or placed upon, products manufactured by Foster Wheeler. Consequently, a causal nexus exists because Foster Wheeler's liability arises from its official duties, performed in accordance with government contracts. Therefore, Foster Wheeler has established federal officer removal jurisdiction.

*Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *7 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013). This court's decision in *Walkup* was—and still is—supported by similar decisions. *See, e.g.*, *Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220, 223–26 (D. Del. 2009) (relying, in part, on the affidavits of Admiral Lehman and Dr. Betts to find removal appropriate for failure-to-warn claims related to asbestos use aboard Navy ships).[10]

Likewise Westinghouse satisfies the last element of the federal officer removal statute in demonstrating that the design defect and failure to warn claims arise directly out of the Navy's involvement in the design process, including control over what warnings should be used.

The Supreme Court has rejected a "'narrow, grudging interpretation' of the [federal officer removal statute], recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.' We therefore do not require the officer virtually to 'win his case before he can have it removed.'" *Jefferson County v. Acker*, 527 U.S. 423, 432 (1990) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). Judge Robreno expanded on this point in *Hagen*, explaining that

---

[10] *See also Shepherd v. Air & Liquid Sys. Corp.*, C.A. No. 12-143L, 2012 WL 5874781, at *8–9 (D.R.I. Nov. 20, 2012) (Foster Wheeler established federal officer removal jurisdiction based, in part, on the same affidavits presented in this case); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 777–81, 786 (E.D. Pa. 2010) (same); *MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2013 WL 6571808, at *8–12 (D. Del. 2013), *report and recommendation adopted*, 2014 WL 108535 (D. Del. Jan. 9, 2014) (relying on similar affidavits to find removal appropriate under the federal officer removal statute); *Thompson v. Crane Co.*, Civil No. 11-00638 LEK-RLP, 2012 WL 1344453, at *17–20, 29 (D. Haw. Apr. 17, 2012), *aff'd, Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) (same); *Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 989, 982 (C.D. Ill. 2011) (same).

> [T]he court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense. It is the sufficiency of the facts stated—not the weight of the proof presented—that matters. For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense. It is not the Court's role to impose judicially created tolls on those who seek to travel on it.

*Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782–83 (E.D. Pa 2010). Therefore, the court finds that Foster Wheeler and Westinghouse have each established federal officer removal jurisdiction. Accordingly, Plaintiff's Motion to Remand should be **DENIED**.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court **DENY** Plaintiff's Motion to Remand.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. Appx. 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order in Non-Pro Se Matters for Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: February 5, 2016

Sherry R. Fallon
United States Magistrate Judge