IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE ASBESTOS LITIGATION )
)
EDNA S. ESSER a/k/a Edna Tallman, )
Individually and as Executrix of the ) Civ. No. 15-395-GMS-SRF
Estate of CHARLES TALLMAN, )
Deceased, and on behalf of all Wrongful )
Death beneficiaries, )
)
      Plaintiff, )
)
v. )
)
CBS CORPORATION, et al., )
)
      Defendants. )

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

Presently, there is one motion for summary judgment before the court in this asbestos-related personal injury action.[1] The motion was filed by defendant Foster Wheeler Energy Corporation ("Foster Wheeler"). (D.I. 85) Plaintiff Edna Esser ("Plaintiff"), individually and as Executrix for the estate of decedent, Charles Tallman, opposes Foster Wheeler's motion for summary judgment. (D.I. 91) For the reasons set forth below, the court recommends granting Foster Wheeler's motion for summary judgment.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed this asbestos-related wrongful death action against multiple defendants on April 1, 2015, in the Superior Court of Delaware. (D.I. 1) On May 18, 2015, the case was

---

[1] All other parties have been dismissed, or are expected to be dismissed.

removed to this court by Foster Wheeler pursuant to 28 U.S.C. §§ 1442(a)(1)[2] and 1446. (*Id.*) Foster Wheeler filed a motion for summary judgment on September 23, 2016. (D.I. 85) Plaintiff opposes the motion. (D.I. 91) On January 10, 2017, the court held oral argument on Foster Wheeler's motion for summary judgment.

### B. Facts

Plaintiff alleges that Mr. Tallman developed mesothelioma as a result of exposure to asbestos-containing products during his time in the U.S. Navy from 1947 to 1967. (D.I. 86 at 1) From 1948 to 1956, Mr. Tallman worked as a Boiler Tender aboard the USS Caloosahatchee.[3] (D.I. 91 at 1–2) Plaintiff contends that Mr. Tallman's fatal illness was due to exposure to asbestos-containing products that Foster Wheeler manufactured, sold, distributed or installed. (D.I. 1, Ex. A) Accordingly, Plaintiff asserts claims for negligence, strict liability, and punitive damages. (D.I. 1 at ¶ 5)

### C. Testimony of Product Identification Witnesses

Mr. Tallman passed away on April 10, 2015, and was never deposed for this case. (D.I. 46 at 2; D.I. 86 at 1) Therefore, Plaintiff relies largely on the testimony of product identification witnesses to support the claim that Mr. Tallman was exposed to asbestos directly from Foster Wheeler's products and equipment during his time aboard the USS Caloosahatchee. Plaintiff produced two identification witnesses for deposition: Eugene Nealon and William Schaufele. (D.I. 86 at 1–2) Both testified about their experiences aboard the USS Caloosahatchee with Mr.

---

[2] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

[3] Plaintiff's claims against Foster Wheeler are limited to alleged asbestos exposure that occurred when Mr. Tallman served on board the USS Caloosahatchee.

2

Tallman. (*Id.* at 2)

### 1. Eugene Nealon

Mr. Eugene Nealon testified that his service overlapped with Mr. Tallman's aboard the USS Caloosahatchee from 1951 to 1954. (7/19/16 Tr. at 19:15–20:24) Mr. Nealon explained that Mr. Tallman was the leader of his shift group of seven men. (*Id.* at 19:15–21) He stated that Mr. Tallman was in charge of making the asbestos insulation that was packed around the exterior of the steam valves. (*Id.* at 28:6–29:8) Mr. Nealon said that he saw Mr. Tallman break down boilers and clean them. (*Id.* at 32:11–23) He stated it would normally take about one week to clean one boiler. (D.I. 91, Ex. 3 at 42:25–43:4) However, Mr. Nealon stated that he did not believe the cleaning of the boiler would have exposed Mr. Tallman to asbestos. (D.I. 86, Ex. A at 44:21–24) Mr. Nealon could not name the manufacturer of the boilers or the valves. (*Id.* at 25:25–26:2; *Id.* at 46:1–3)

### 2. William Schaufele

Mr. William Schaufele testified that he was aboard the USS Caloosahatchee with Mr. Tallman. (7/21/16 Tr. at 26:3–27:6) At one point during the deposition, Mr. Schaufele stated he could not personally recall any particular maintenance or repair jobs that Mr. Tallman performed. (*Id.* at 42:16–19) Mr. Schaufele speculated as to what Mr. Tallman's tasks would have been based on his rate and rank. (*Id.* at 46:1–12) However, later on in the deposition, Mr. Schaufele stated that he had a memory of Mr. Tallman cleaning out boilers with him. (*Id.* at 63:18–25) Mr. Schaufele identified Foster Wheeler as the manufacturer of the boilers. (*Id.* at 68:18–20) He explained there was a plate on each of the boilers that had Foster Wheeler's name on it. (*Id.* at 68:21–69:1) Mr. Schaufele initially could not confirm that Mr. Tallman's work on the boilers exposed him to asbestos. (*Id.* at 72:21–25) However, he later stated that anybody

3

near the boilers would have been exposed to asbestos. (*Id.* at 91:18–23)

### D. Plaintiff's Alleged Exposure from Defendant's Products

Plaintiff claims Mr. Tallman was exposed to asbestos-containing Foster Wheeler products while aboard the USS Caloosahatchee. (D.I. 91) Plaintiff relies on Mr. Schaufele's testimony that the boiler room had Foster Wheeler boilers. (D.I. 86, Ex. B) Mr. Schaufele stated that he thinks the Foster Wheeler boilers were lined with asbestos insulation. (*Id.* at 63:1–67:15) Additionally, Mr. Nealon recalls Mr. Tallman cleaning out the boilers. (D.I. 86, Ex. A at 32:11–23)

## III. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Pursuant to Rule 56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

4

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

**B. Maritime Law**

The parties agree that maritime law applies.[4] (D.I. 81) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was

---

[4] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).

exposed to the defendant's product, and (2) the product was a substantial factor[5] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. Appx. 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017). Other courts in this Circuit recognize a third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[6] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012); *see* § III(C), *infra*.

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to

---

[5] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[6] The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

6

the defendant's product for some length of time."[7] *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Stark*, 21 F. Appx. at 376).

On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. Appx. at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. Appx. at 376 (citations omitted).

### C. Bare Metal Defense

Should the court decide that product identification has been established, it then considers the assertion of the "bare metal" defense by the moving defendant. In this instance, as to equipment manufactured and shipped by Foster Wheeler to the Navy, Foster Wheeler contends that its boilers had no asbestos containing thermal insulation on them. The bare metal defense protects a defendant from liability on the basis that no duty to warn exists relating to asbestos-containing products the defendant did not manufacture or distribute, absent evidence that defendant did in fact manufacture or supply the asbestos-containing product to which Plaintiff was exposed. *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801–802 (E.D. Pa. 2012) (explaining the policy rationale for holding only those who make or sell the injurious product

---

[7] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury.'" *Stark*, 21 F. Appx. at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

7

liable for the injuries alleged); *Malone v. Air & Liquid Sys. Corp.*, 2016 WL 4522164, at *5 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015 WL 5766460 at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow*, 2017 WL 1199732, at *5 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017). The 'bare metal defense' is recognized when maritime law applies. *Carper v. Gen. Elec. Co.*, No. 2:12-06164-ER, 2014 WL 6736205, at *1 (E.D. Pa. Sept. 4, 2014) (citing *Conner*, 842 F. Supp. 2d at 801).

**D. Government Contractor Defense**

Under the test set out in *Boyle v. United Techs. Corp.*, a federal contractor will not be held liable for its product's design defects when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. 487 U.S. 500, 512 (1988). The defense is applicable to both design defect and failure to warn claims. *See, e.g., MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2013 WL 6571808, at *3 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2014 WL 108535 (D. Del. Jan. 9, 2014); *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *2 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013); *In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d 451, 454 (D. Del. 2009). In a failure to warn claim, the first prong of *Boyle* is altered to preclude liability where the government exercised discretion and approved the warnings. *See Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). Courts

require the government approval to "transcend rubber stamping" for the defense to shield a government contractor from liability for failure to warn. *Id.* at 1156–57.

## IV.   DISCUSSION

### 1.   Product Identification and Causation

The court recommends granting Foster Wheeler's motion for summary judgment, because Plaintiff has failed to show that a material issue of fact exists as to whether Foster Wheeler's product was a substantial factor in causing Mr. Tallman's injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiff alleges that Mr. Tallman was exposed to asbestos-containing products used in connection with Foster Wheeler boilers while serving aboard the USS Caloosahatchee. (D.I. 91 at 1) Plaintiff relies largely on the depositions of Mr. Nealon and Mr. Schaufele regarding Mr. Tallman's exposure to asbestos. (D.I. 91)

Mr. Tallman worked as a boiler tender in the same room as Mr. Nealon and Mr. Schaufele. (7/19/16 Tr. at 18:15–19; 7/21/16 Tr. at 26:3–27:6) It is undisputed that there were Foster Wheeler boilers aboard the USS Caloosahatchee. (7/21/16 Tr. at 68:18–20) Mr. Nealon and Mr. Schaufele stated that boiler workers would have to break down the boilers and clean them. (7/19/16 Tr. at 32:11–23; 7/21/16 Tr. at 63:18–25) To clean the boilers, the workers would crawl into the boilers and scrape the carbon off the tubes. (7/21/16 Tr. at 64:13–65:13) This process normally took about one week to complete. (7/19/16 Tr. at 42:25–43:4) However, Mr. Nealon stated that he did not believe Mr. Tallman would have been exposed to asbestos during the cleaning process. (D.I. 86, Ex. A at 44:21–24) Whereas, Mr. Schaufele stated that anyone near the boilers would have been exposed to asbestos. (7/21/16 Tr. at 91:18–23) Mr.

9

Schaufele further stated that during the cleaning process, he sometimes had to smooth down a piece of refractory around the openings of the burners that had crumbled apart. (*Id.* at 65:14–24)

Mr. Nealon testified as to Mr. Tallman's exposure to asbestos on the exterior of the boiler. According to his testimony, Mr. Tallman was in charge of making the asbestos packing that was applied around the exterior of the steam valves that were attached to the boilers. (7/19/16 Tr. at 28:6–29:8) Mr. Nealon stated that he saw Mr. Tallman make the asbestos packing about six times. (*Id.* at 63:25–64:9) Mr. Schaufele also testified that Mr. Tallman's work involved application of asbestos-containing pipe insulation and covering, but was unable to identify the manufacturer of the insulation and covering. (7/21/16 Tr. at 33:9–34:23)

Mr. Nealon and Mr. Schaufele's deposition testimony does not establish exposure to an asbestos-containing Foster Wheeler product. Mr. Nealon stated that he saw Mr. Tallman make exterior asbestos packing for the valves, however, the record does not provide any information to infer the materials were manufactured by Foster Wheeler. (*See* 7/19/16 Tr. at 63:25–67:11) Moreover, neither Mr. Nealon nor Mr. Schaufele attributed asbestos exposure to the removal of carbon during the cleaning of the interior of the boilers. (7/19/16 Tr. at 32:11–23; 7/21/16 Tr. at 63:18–25) Mr. Schaufele stated that the refractory sometimes had to be smoothed down during cleaning, but Mr. Schaufele had no recollection of Mr. Tallman performing this task. (7/21/16 Tr. at 67:19–23) Additionally, Mr. Schaufele stated that he only performed this task once, and that it was possible that individuals assigned to the boiler room would have never performed refractory work. (*Id.* at 67:25–68:7) As such, there is no evidence that the material which may have contained asbestos, the refractory block, was ever repaired, replaced, or disturbed by Mr. Tallman. (D.I. 97 at 5–7) Plaintiff's references to general block exposure do not assist the court in determining to which specific components Mr. Tallman was exposed. (*See* D.I. 91 at 9) Even

10

with the facts viewed in the light most favorable to Plaintiff, generalities and speculation do not create a dispute of material fact. *Walkup v. Air & Liquid Sys. Corp.*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014). Although Foster Wheeler product identification aboard the USS Caloosahatchee is established, the evidence in the record fails to create a material issue of fact concerning the substantial exposure requirement. "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Leonard v. Stemtech Health Scis., Inc.*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)).

Plaintiff further argues that under *Quirin v. Lorillard Tobacco Co.*, Foster Wheeler is responsible for the effects of any exposure relating to its product, whether from original or replacement parts, regardless of the manufacturer. 17 F. Supp. 3d 760, 769–70 (N.D. Ill. 2014). Thus, Plaintiff contends that the bare metal defense does not apply because Foster Wheeler required asbestos-containing insulation for its boilers, and provided some of the insulation. (D.I. 91 at 7–9) In support of this assertion, Plaintiff cites to the deposition of Thomas J. Schroppe, a Foster Wheeler employee. (*Id.* at 2) Schroppe states that the furnace area of a Foster Wheeler boiler would be lined with asbestos block insulation. (D.I. 91, Ex. 4 at 74:1–6) Schroppe states that Foster Wheeler supplied asbestos-containing parts on some boilers, and also supplied replacement parts for some boilers. (*Id.* at 103:15–22) Plaintiff cites to the Foster Wheeler

11

Technical Manual and the Foster Wheeler Contract Design Manual for the assertion that Foster Wheeler boilers required refractory and insulation. (D.I. 91, Exs. 5, 7) Plaintiff also relies on Foster Wheeler's objections and responses to interrogatories, filed in 2007, from a lawsuit in the state of Florida. (D.I. 91, Ex. 6) In a response, Foster Wheeler states, "the equipment or services provided by [Foster Wheeler] might have involved the use, application or procurement of asbestos products manufactured by others." (D.I. 91, Ex. 6 at 14) Plaintiff highlights that Foster Wheeler sold asbestos-containing insulation to be used with its boilers in its 1967 Insulation Standard Catalog. (D.I. 91, Ex. 10) Plaintiff further highlights that the refractory insulation in the boilers during Mr. Tallman's service was likely original to the boilers, because the USS Caloosahatchee was launched in 1945, and the shelf life of the asbestos block in the interior furnace walls could be 10 to 15 years. (D.I. 91, Ex. 4 at 111:19–116:5; Ex. 8) Lastly, Plaintiff relies on the affidavit of Walker Newitts, a former employee of Foster Wheeler. (D.I. 91 at 5–6) Newitts states that Foster Wheeler would specify in a contract what type of insulation to use with a boiler, and the insulation was often sold by Foster Wheeler. (D.I. 91, Ex. 11 at ¶¶ 8, 9)

Application of the bare metal defense warrants summary judgment in Foster Wheeler's favor, because Plaintiff fails to show that a material issue of fact exists as to whether Foster Wheeler provided the insulation to be used with its boilers aboard the USS Caloosahatchee. During the deposition, Schroppe states that the insulating block "could" have been asbestos-containing. (D.I. 91, Ex. 4 at 73:18–20) Furthermore, Schroppe's deposition does not concern the USS Caloosahatchee, but rather different Navy vessels. (D.I. 91, Ex. 4) Moreover, the Foster Wheeler Technical Manual[8], the Foster Wheeler Contract Design Manual, the Insulation

---

[8] The Foster Wheeler Technical Manual represents the Navy's specifications regarding the installation of refractory material, not Foster Wheeler's. (D.I. 91, Ex. 5)

12

Standard Catalog, and Newitts' affidavit do not establish that Foster Wheeler installed asbestos-containing boilers aboard the USS Caloosahatchee. (D.I. 91, Exs. 5, 7, 10, 11) The 2007 interrogatory response concerns boilers used at industrial sites, not marine boilers. (D.I. 91, Ex. 6 at 14) Therefore, Foster Wheeler's response is not related to the equipment found on the USS Caloosahatchee. Additionally, during his deposition, Mr. Nealon assumed that work had been done on the boilers prior to him performing maintenance work on the boilers. (7/19/16 Tr. at 70:6–11) However, even if the refractory materials were original to the boilers as Plaintiff argues, neither Mr. Schaufele nor Mr. Nealon could recall Mr. Tallman working with the refractory material. (7/21/16 Tr. at 67:19–23; *See* 7/19/16 Tr.) Lastly, Foster Wheeler cites to the affidavit of Lawrence Stilwell Betts, a retired United States Navy Captain, who states that the Navy specified the types of thermal insulation to be used on the boilers. (D.I. 86, Ex. D at ¶ 6)

Moreover, the court has previously declined to follow *Quirin*, and determined the weight of authority favors the bare metal defense.[9] *Conner*, 842 F. Supp. 2d at 794; *see also Lindstrom*, 424 F.3d at 495; *Denbow*, 2017 WL 1199732, at *5 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017); *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Malone*, 2016 WL 4522164, at *5 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801 (S.D.N.Y. 2011); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1030 (S.D. Ill. 1989); *O'Neil v. Crane Co.*, 266 P.3d 987, 997–98 (Cal. 2012); *Taylor v. Elliot Turbomachinery*

---

[9] *See* § III(C), *supra*.

*Co.*, 90 Cal. Rptr. 3d 414, 429 (Cal. Ct. App. 2009); *In re Asbestos Litig. (Howton)*, C.A. No. N11C-03218 ASB, 2012 WL 1409011, at *1 (Del. Super. Ct. Apr. 2, 2012); *In re Asbestos Litig. (Wolfe)*, C.A. No. N10C-08-258 ASB, 2012 WL 1415706, at *3–4 (Del. Super. Ct. Feb. 28, 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498–99 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127, 134–35 (Wash. 2008).

Plaintiff has failed to show that a material issue of fact exists as to whether Mr. Tallman was exposed to asbestos from products manufactured or supplied by Foster Wheeler aboard the USS Caloosahatchee. Consequently, the court recommends granting Foster Wheeler's motion for summary judgment. *See Lindstrom*, 424 F.3d at 492.

### 2. Government Contractor Defense

Summary judgment should be granted based on the absence of any factual dispute over the lack of causation of Mr. Tallman's injuries. However, Foster Wheeler asserts an additional basis for summary judgment as a matter of law pursuant to the government contractor defense.

The government contractor defense shields defendants from liability for acts arising out of the performance of a federal contract. *See Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 797 (5th Cir. 1993). A federal contractor is not liable for failure to warn when:

(1) the United States approved reasonably precise specifications;
(2) the equipment conformed to those specifications; and
(3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle v. United Techs Corp.*, 487 U.S. 500, 512–13 (1988).

Foster Wheeler points to Military Specifications ("MilSpecs") and Affidavits from Admiral Ben J. Lehman (Ret.) and Foster Wheeler corporate representative, J. Thomas Schroppe, as evidence that the government was involved in the design and manufacture of all products used on Navy warships. (D.I. 86 at 14–16) Admiral Lehman stated:

14

> The U.S. Navy would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to any asbestos hazards on their equipment. This would have included boilers. Further, the U.S. Navy would not have allowed Foster Wheeler to place any warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy or to a U.S. Navy contractor...including its technical and operational manuals....

(*Id.* at 15, Ex. E at ¶ 14) Mr. Schroppe confirmed that Foster Wheeler complied with the Navy's specifications. (*Id.* at 15, Ex. C)

However, Plaintiff submits the Declaration of Captain Arnold P. Moore, USNR (Ret.), P.E. who states:

> I can attest to the instructions the Navy required its equipment manufacturers to provide to warn of hazards associated with equipment delivered to the Navy. The Navy relied heavily upon its equipment manufacturers to identify hazards associated with their products. The hazards associated with exposure to asbestos and asbestos containing materials and equipment were not exempt.

(D.I. 91, Ex. 19 at ¶ 12) Captain Moore cites to MilSpecs requiring manufacturers to provide operating, maintenance, and "safety precautions" for their equipment. (*Id.*, Ex. 19 at ¶ 13) Captain Moore also discusses a number of documents and military specifications establishing that the Navy required or expected manufacturers to warn of the hazards associated with the use of their products. (D.I. 91, Ex. 19)

A factual question exists as to whether the Navy exercised discretion and approved the warnings at issue, or whether it required manufacturers to create their own warning labels. Consequently, genuine issues of material fact remain with respect to the first two elements of the *Boyle* analysis: (1) whether the United States approved reasonably precise specifications, and (2) whether the equipment conformed to those specifications. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 512–13 (1988); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). Therefore, summary judgment based on the government contractor defense would not be

warranted. However, for the reasons discussed in the preceding section, Foster Wheeler is, nonetheless, entitled to summary judgment based upon lack of causation under maritime law.

### 3. Punitive Damages

The recommendation for granting Foster Wheeler's motion for summary judgment for the reasons stated in § IV(1), *supra*, eliminates the need to consider punitive damages. However, for the sake of completeness, this report and recommendation addresses the arguments.

Summary judgment should also be granted in favor of Foster Wheeler with respect to Plaintiff's punitive damages claims. In Count II of the complaint, Plaintiff alleges that Defendant acted "willfully and wantonly, for [its] own economic gain and with reckless indifference to the health and safety of Plaintiff Charles Tallman" in including asbestos in its products and failing to warn of the associated hazards. (D.I. 1, Ex. A at ¶ 20)

Punitive damages are limited to situations where "a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (internal citations omitted). "Punitive damages are not intended to compensate the plaintiff for a loss suffered, but instead are 'imposed for purposes of retribution and deterrence.'" *In re Asbestos Prod. Liab. Litig. (No. VI)*, 2014 WL 3353044, at *11 (E.D. Pa. July 9, 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)).

In support of her claim, Plaintiff cites to various journal articles published in the 1930s, explaining the hazards of asbestos. (D.I. 91, Exs. 33, 34, 35, 36, 37, 38, 39) However, Plaintiff fails to produce any evidence regarding Foster Wheeler's actual knowledge of asbestos hazards or conduct indicative of willful or wanton actions. Therefore, the court should grant Foster Wheeler's motion for summary judgment with respect to Plaintiff's punitive damages claims.

## V. CONCLUSION

For the foregoing reasons, the court recommends granting Foster Wheeler's motion for summary judgment.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 21, 2017

Sherry R. Fallon
United States Magistrate Judge